KLOSINSKI *v.* MICHIGAN STATE BOARD OF EXAMINERS
OF BARBERS.

1. STATUTES—LOCAL ACTS—REFERENDUM.

   A special or local act cannot become effective until approved by
   a majority of the electors voting thereon in the district to be
   affected (Const. 1908, art. 5, § 30).

2. SAME—CONSTITUTIONAL LAW—LOCAL ACTS—BARBERS—REGULA-
   TION OF SERVICE CHARGES AND HOURS.

   Under record convincingly disclosing that statute regulating
   service charges and hours of operation of barber shops was
   understood and intended to be effective in one county only
   but that the test of whether the regulations sought to be
   imposed are necessary or proper has no reasonable or logical
   relation to classification according to population, statute
   contravened constitutional prohibition against the enactment
   of a local or special act where a general act could be made
   applicable (Const. 1908, art. 5, § 30; Act No. 309, Pub. Acts
   1941).

3. SAME—CONSTITUTIONAL LAW—POPULATION—CLASSIFICATION.

   Since statute, regulating service charges and hours of operation
   of barber shops, which was to be enforced only in any county
   having a population according to the last Federal census of
   at least 500,000, could be effective only in the one county hav-
   ing such population, it was unconstitutional as a general or
   state-wide act (Const. 1908, art. 5, § 30; Act No. 309, Pub.
   Acts 1941).

4. COSTS—PUBLIC QUESTION—STATUTES—BARBER SHOP SERVICE
   CHARGES AND HOURS OF OPERATION.

   No costs are awarded on appeal in suit to restrain State board
   of examiners of barbers from enforcing provisions of act

regulating service charges and hours of operation. of barber
shops because of the public nature of the controversy (Act
No. 309, Pub. Acts 1941).

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted January 11, 1944. (Docket No. 52, Calendar No. 42,527.) Decided February 24, 1944.

Bill by Stanley Klosinski and others against Michigan State Board of Examiners of Barbers and others for an injunction restraining the enforcement of an act alleged to be unconstitutional. Decree for plaintiffs. Defendants appeal. Affirmed.

*Harry Cohen* (*MacMahon, Abbott & Roberts* and *Arthur J. Abbott,* of counsel), for plaintiffs.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara, Ben H. Cole* and *Leonard Meldman,* Assistants Attorney General, for defendants.

NORTH, C. J.   Plaintiffs' bill in chancery was filed for the purpose of restraining the defendant Michigan State board of examiners of barbers and the individual members of that board from enforcing certain regulations promulgated by the board under Act No. 309, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 8711–11 *et seq.,* Stat. Ann. 1943 Cum. Supp. § 18.118[1] *et seq.*), and to test the constitutionality of that act.   Plaintiffs are licensed barbers who own and operate barber shops in the city of Detroit, Wayne county, Michigan.   The regulations promulgated by the board of barber examiners under the above-cited act attempt to fix the minimum prices charged by barbers and the hours of opening and

closing barber shops in Wayne county. The title of Act No. 309 and the portion of the act pertinent to decision herein are printed in the margin hereof.* Plaintiffs assail the validity of the act on the grounds: (1) that it is violative of the due-process clause of the Federal Constitution and of the State Constitution; (2) that it is not within the exercise of the police power of the State as having to do with

---

\*              Act No. 309, Pub. Acts 1941.

Title. An act to give the State board of examiners of barbers jurisdiction to investigate trade practices among barbers, haircutters, barber and haircutting schools and colleges; to enforce such regulations pertaining to reasonable service charges and reasonable hours of operation of barber shops, haircutting shops, barber and haircutting schools and colleges as will tend to eliminate unfair and insanitary practices; fixing territorial units for such regulations; regulating barber schools, haircutting schools and colleges and practices therein; and repealing all acts and parts of acts in conflict herewith.   \*   \*   \*

Sec. 3. Whenever it shall appear to the State board of examiners of barbers that unfair or unreasonable economic practices prevail among barbers, haircutters, barber schools, haircutting schools and colleges, in any county of the State of Michigan, which may tend to make insecure the economic status of the barbers and haircutters therein, or that the hours of operation of barber shops and haircutting shops are unreasonably long or irregular and tend to make difficult adequate and timely sanitary inspections, or tend to impair the health or efficiency of barbers or haircutters or to endanger the health or safety of their patrons, it shall be the duty of the board to investigate and determine whether the conditions or practices above mentioned, or any of them, prevail in such county, and if found to exist or to be threatened by conditions existing therein, the board may by official order, after due notice and hearing as provided for herein, promulgate scales of reasonable minimum prices to be charged for barber and haircutting services in such county and may establish reasonable opening and closing hours for barber shops and haircutting shops therein and may make and promulgate such other reasonable orders, rules and regulations as may be calculated to promote the purposes of this act as herein expressed.

If upon investigation, the board finds that any such regulations should be made applicable to 2 or more adjoining counties, the board may include all such counties under 1 order, and if the board finds that regulations to be imposed should vary in different localities within the same county, in order equitably to attain the objectives of this act, the board may make such different regulations for such different localities as will make such order adjustable to differing economic or social conditions therein.   \*   \*   \*

Sec. 9. The provisions of this act shall only be enforced in any county of the State having a population according to the last Federal census of at least 500,000.

public health, public morals, public safety, or public welfare; (3) that it is class legislation in violation of the State Constitution; and (4) that it is special or local legislation in violation of article 5, § 30, of the State Constitution and that it contains no provision for its becoming effective in any county other than Wayne when such other county or counties attain a population of 500,000 or more.

The circuit judge before whom the case was heard held Act No. 309, Pub. Acts 1941, unconstitutional and granted plaintiffs the injunctive relief sought. The Michigan State board of examiners of barbers and the individuals composing that board have appealed. Because it furnishes ample ground for disposition of the instant appeal, we consider only plaintiffs' contention that Act No. 309, Public Acts 1941, is invalid as special or local legislation violative of article 5, § 30, of the State Constitution, which reads:

"The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act * * * shall take effect until approved by a majority of the electors voting thereon in the district to be affected."

Under the foregoing constitutional provision, a special or local act cannot become effective "until approved by a majority of the electors voting thereon in the district to be affected." It is admitted that Act No. 309, Pub. Acts 1941, has not been submitted to or approved by a majority of electors of Wayne county which is the only county in this State having a population of 500,000, notwithstanding section 9 of the act provides: "The provisions of this act shall only be enforced in any county of the State having a population according to the last Federal census of at least 500,000." It is not

contended, nor could it be, that the act in question is valid or effective as a special or local act.

The record convincingly discloses that Act No. 309, Pub. Acts 1941, as passed by the legislature was understood and intended to be effective only in Wayne county; but it also appears from undisputed testimony that the regulations sought to be imposed under the act are no more fitted to or required in Wayne county than in other parts of the State. From this undisputed testimony it definitely appears that the test of whether the regulations sought to be imposed are necessary or proper has no reasonable or logical relation to a county's population being more or less than 500,000.

Each of the three members of the defendant board of examiners was sworn as a witness. One of them, Ben A. Benson, gave the following testimony:

"Originally when the bill was introduced in the legislature it did cover the entire State. I don't know why the bill was restricted to Wayne county. * * * Unfortunately I know of no reason why, if the act is beneficial in Wayne county, it should not apply to Saginaw, Pontiac, Grand Rapids, Menominee, Escanaba, Sault Ste. Marie and all of the other cities in the State of Michigan."

Each of the other two members of the defendant board gave testimony to the same effect. Under such a record the act in question is clearly violative of that portion of article 5, § 30, of the Constitution (1908) which provides: "The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question."

While unnecessary to decision herein, it may further be noted that by the very terms of the act itself it could never become effective except in Wayne county. The 1940 Federal census was the last Fed-

eral census prior to the passage of Act No. 309; and according to that "last Federal census" Wayne was the only county in this State having a population "of at least 500,000." Section 9 of the act provides that it "shall only be enforced in any county of the State having a population *according to the last Federal census* of at least 500,000." It is at once obvious that under this provision the act could never become effective in any county other than Wayne. This alone would render Act No. 309, Pub. Acts 1941, unconstitutional as a general or state-wide act. Our decision in *Mulloy* v. *Wayne County Board of Supervisors,* 246 Mich. 632, is quite controlling of the instant case. We there said:

"We are of the opinion that the act as a whole is so framed that it cannot be made applicable to other counties as they acquire a population of 300,000 or more; and that by its very terms it is made clear it was not intended the act should be put in force in such other counties. No provision is made in the act for so doing. No other conclusion can be reached than that it is local legislation applicable to Wayne county only. The act contains no provision for a referendum, and it has not been submitted to a vote in Wayne county. It violates section 30, art. 5, of the Constitution, and must be held invalid."

Other questions presented on this appeal, not being essential to decision, are not passed upon; but for the reasons above noted Act No. 309, Pub. Acts 1941, must be held unconstitutional and plaintiffs granted the injunctive relief prayed. The decree entered in the circuit court is affirmed. No costs will be awarded in this Court because of the public nature of the controversy.

STARR, WIEST, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.